EG Not even thosehe who trust in darkness, would excuse their traumas from arresting her right, and have her found in a prison without friends if it depended on her which way she had come to.  ground, lying there, seemingly still in tremble as though she could not move by the sobbing. The Maiden含   2 May it please the court, my name is Howard Kostrinsky representing Petitioner Mountain States Contractors. I would like to reserve three minutes for rebuttal. Fine. Petitioner Mountain States Contractors appeals the determination of the Occupational Safety and Health Review Commission that it violated the Occupational Safety and Health Act. This court will be the first to look at the regulation at issue concerning crane operations and wire rope inspections. Crane operators are taught that a broken wire is a between a broken apart wire and a wire that is cracked. If the Administrative Law Judge's decision is affirmed and a cracked wire is synonymous with a broken wire, it will have a nationwide effect on how crane operators are instructed to inspect wire ropes. I'm not sure that I see that as the exact issue in this before us. You have the interview with SOTAC and you have two crane operators who in July told SOTAC that the crane should be brought down because there are broken and smashed wires. And these Hutchins signed a statement to that effect. I understand that at trial the testimony used different words, but we're talking about what is the record before this ALJ. From the deposition on when Mr. Hutchins was asked about the condition of wires, he truthfully explained what happened was in the initial interview with Ms. SOTAC, understanding that it was taken on a hot morning, on a barge, on a river, with just him and the investigator. He said that there were broken wires. She did not ask him. He said, actually he said, there were broke or there were broken wires. She never asked him, what do you mean by broke or broken wires? She simply wrote that down. Because that's the standard, right? Broken. But what does broken mean? Because the judge in this case said that broken meant not just broken apart, but also wires that were cracked without any guidance as to the substantiality of the cracks. Are we talking hairline fractures? Are we talking deep cracks? Are we talking slight indentations and the like? So what has happened in this case is the one statement that was explained by the witness, Mr. Hutchins, as to what he actually saw was explained that he saw cracks. That's what he explained. Sure, there was that one statement he made to Ms. SOTAC, the OSHA investigator, where he did say they were broken, but again, as I reiterate... It wasn't just one statement. It was, for Mr. Hutchins, it was statements in May, it was forms filled out, and confirmation in July that there were broken and smashed wires. I would respectfully disagree with regard to the forms that he filled out. If you're speaking about the daily inspection reports, there is no evidence in the record that he ever stated on those that there were sufficient broken wires to meet the out-of-surface criteria. The only thing that he said and other crane operators said was that the boom cable needed to be replaced. What does that mean under the form? It needed to be replaced eventually. No. What does that mean? My understanding of the form is that if you check that repair spot, that the form itself says that that piece of equipment should be repaired before it is replaced into service. Exactly. He said it needed to be replaced. He did not say it needed to be taken out of service. He did not. What does it mean? I'm concerned with linguistic efforts here, as was the ALJ, because the form itself says that if repair is required, that you will make that repair before the equipment is used. Now, in plain English, counselor, that says to me when somebody who's operating a dangerous piece of equipment says it needs to be fixed and the form says that means fixed before use, you take it out of service and repair it  Tell me how you can see that another way. Because the operator who filled out the form said that the cable needed to be replaced, and in his judgment, it could be operated and did not need to be immediately repaired and taken out of service. Did the operator say that on the form? He didn't say. By his actions, he said it could continue to be operated. By his actions, meaning because he continued to operate the crane? Particularly where he understood and had taken cranes out of service when he felt they met the out-of-service criteria. He did not believe that at the times that he said the crane cable had to be replaced, that he felt it had to be taken out of service. Then how did he tell Investigator Sotak, Mr. Hutchins, in May, that the broken wires throughout the cable met the out-of-service criteria before the accident? I don't know how he told them that, but what I do know... That is what he told them, and we're talking about what the evidence is before this ALJ, and that is the evidence before the ALJ. And this ALJ found also that Mr. Hutchins was a supervisor and an agent of Petitioner. Under the guidelines for the investigation, that statement should have been taken in the presence of counsel if he were a supervisor. Because, to kind of jump ahead, if I may, the Petitioner pled an affirmative defense of unpreventable employee misconduct in that an employee knew of something, didn't tell anybody about it, and went on and operated the crane. However, the administrative law judge said that Mr. Hutchins was not just a crane operator and a competent person, but because he operated the crane and had the authority over the crane, he was a supervisor and agent of Petitioner. The ALJ acknowledged the fact that the elements of the unpreventable employee misconduct defense had been met, even assuming that it was broken, whatever broken meant, assuming that he knew it, he didn't tell anybody. He didn't tell anybody, and the only way to get around that was to find that his actions of this one employee, the crane operator, were attributable to the company. And he found without any support, either in the regulations or in any case precedent, that an individual who operated a piece of machinery did not direct the work of any employees, was a supervisor for purposes of A, imputing liability, and B, doing away with that unavoidable employee misconduct defense. And why can't that be done? Why was that wrong of the ALJ to do that? First of all, it was contrary to precedent. There was no authority that he cited, nor the government cited for that proposition, because there is none. In every case that has been cited, the individual who was the competent person also directed co-workers or supervised them, and thus there was a basis for finding that they were a supervisor. Here, however, there is no evidence in the record that Mr. Hutchins directed or supervised anybody while he was doing his job in the cab of the crane. If the department wishes to do that, to say that a competent person is also a supervisor, there is an avenue for doing it, not through adjudication, but if it's taking an interpretation that has never been made before, that is certainly appropriate for the rulemaking process rather than the adjudicatory process. Let me make sure I understand what your argument is, because all of these determinations on who is competent and who is a supervisor are all very fact-specific. You would agree with me on that? On a case-by-case basis, we have to see what this employer did. Actually, I think the regulation defines what a competent person is, which requires a certain level of training and experience operating the machine. And the employer is authorized then to designate who is a competent person, as this employer did? Yes. Okay, so what we have is this employer designated crane operators as the competent persons to make the determination of the viability and usability of the cranes, correct? Yes. And they had, the way this employer worked his crane operators, they filled out the daily inspection forms, correct? Before they started work, they did the inspection and they filled out the form. Yes, Your Honor. And then there were some regular daily meetings for discussions, correct? There were meetings before everybody started their work. They had a pre-shift huddle or meeting to talk about working safe, working smart, if there were particular issues. It was for the entire crew. Okay, so this employer designates crane operators as the competent persons. They fill out the forms and they can speak at these meetings about whether there's an equipment problem. And yet, well, I think that there was discussion in the record about things said at these meetings, correct? Usually the foremen were the ones or the superintendent who conducted the meetings and talked about general or specific safety matters. It was not, there was no evidence in the record that there was taking questions or comments from the floor and that competent person crane operators addressed the pre-shift safety meetings to say, I found this or this has occurred. Okay, so what you have then is you have crane operators who fill out daily forms. Let's say they said on the daily forms what these crane operators said. The crane should be brought down, there are broken wires in the cranes, it meets the out-of-service criteria. Now, we know from the record that those daily inspection reports were not reviewed by anybody in this company. They were compiled on site and when the book was full of those, they were shipped to a storage site without review. So what I'm struggling with is that under this particular employer's methodology, he has charged a crane operator with being the competent person. He's given that crane operator a form that enables the crane operator to tell the employer what's wrong and the employer has no one review that form. In that circumstance, I don't understand or perhaps you could tell me why that crane operator is then not in fact a supervisor and the repository of knowledge for that employer because the employer has created the situation in which no one else in management reviews the request of that crane operator to take a crane out of service. Why isn't that constructive knowledge? One of the premises of your statement was about some of the comments on the forms. You should be aware that what many of those comments related to a different cable. No, I understand that. I'm separating the boom cable from the auxiliary. And there was nobody who said that the boom cable met the out-of-service criteria. On those forms, did not specifically say it met the out-of-service criteria. Should they be... The forms themselves are in the record. Yes. If the forms themselves indicate that it should be taken out of service and that there are broken wires either under Mr. Hutchins' form completions, Mr. Bundy's form completion who was driving the crane at the time that it broke, if those indicate that it should be taken out of service or checkmark needed repair and no one else reviews that, then aren't those two crane drivers the representative of the employer by his designation competent persons who then are the only persons on the site who know on behalf of the employer the condition of the crane? By the judge's reasoning, if you had a competent person there was... Let's ask first. Answer first. Okay. Let me get to that. The competent person who makes the determination as to the usability of the crane, which in this case was Mr. Bundy, Mr. Hutchins, Mr. Sheehan. They were the three individuals who made that determination. One of them, Mr. Hutchins, had said at one point that it met the out-of-service criteria. He continued to operate it. Is he the agent or representative of the company? We would contend no. Why not if the company failed to look at the information he conveyed and had no one review it? Then the company has chosen to present that competent person as the company's representative. By regulation, the person who makes the decision on whether to... who signs off on using the crane is a competent person. If somebody else above them is charged with looking over their shoulder on their determination, the competent person no longer fulfills the obligation of what a competent person is under the regulation. If no one is in fact looking at the information that they write down on the employer's forms, then they remain the competent person and their knowledge is the employer's knowledge. Why is that not correct? Whether their knowledge is the company's knowledge, because there's no agency relationship. So the employer then can decide that the crane operator is the one who's supposed to inspect the boom and write down in the report that is then placed in the very same crane box that the operator is going into and never shown to anybody else and then put in storage when the form booklet is full. The employer can decide to operate in that fashion and never have any supervisor have knowledge. The employer is obligated to do so because, in this case, the superintendent, Mr. Tom Sheehan, was not a crane operator. So he could not have been a competent person. So he could not have looked over the shoulder, second-guessed, or reviewed because, in this situation where you had a crane operator who was making the final call, because they were trained crane operators. So they made the final call and said it was broken and the employer, and know that information on behalf of the employer. The concern is it feels very much like wanting to have it both ways. You assign this crane operator to be the person to make the call. That person makes the call that there's a problem here. The employer puts blinders on and says, Oh, I'm not going to look at that form. I'm going to ship it away to storage. And then says, Oh, I'm sorry, that was employee improper activity. That is my defense now. I don't think you get to have it both ways. The final decision that was made was not the form. It was the decision to operate the form. And even assuming that what you have stated, that the form said take it out of service, the exact same person who completed the form, went ahead and on their own, without anybody telling them to do so, operated the crane. That was the final decision. Your red light has been on for a long time because we've taken lots of questions. I'm sorry, I didn't know if I was supposed to shut up. No, you're supposed to answer our questions. So I'm just indicating that if you want to save your time for rebuttal, you should hear from the other side. Good morning. May it please the court. My name is Juan Lopez, and I represent the Secretary of Labor. Your Honors, this case is simply about substantial evidence, and tangentially about the proper interpretation of the wire rope inspection standard. As Your Honors have rightfully pointed out, there's substantial evidence of record that demonstrates that the boom cable wires were broken. And also, the credibility determinations of the ALJ here are entitled to deference because his determinations were not inherently incredible or patently unreasonable. Accordingly, the ALJ correctly found that the crane's boom cable met the removal criteria of the standard,  Also, common sense consideration of the standard with a view towards safety supports the Secretary's interpretation that wires that are described as cracked or fractured fall within the scope of the term broken for purposes of the standard. The Secretary's interpretation is entitled to substantial deference according to the Supreme Court's 1991 decision in Martin v. Osherak. Furthermore, there is no due process violation here, because the plain meaning of the term broken provides fair warning of the standard's requirements. I'd like to turn first to the issue that was touched upon during the first part of this argument, that there, in fact, is substantial evidence, and that is utterly the decisive point here. Substantial evidence is in the form of employee statements during the investigative phase of this case, as well as the daily inspection reports, and also certain corroborating testimony during the trial. Specifically, there were four individuals during the inspection phase that directly told the inspector, Michelle Sotak, that they had seen broken wires. It started with Mr. Robert Kindrecht, who stated that during his annual inspection on April 3rd, that he had seen two broken wires. He said this during the inspection, and he also confirmed this during the trial phase. Was he the inspector that didn't boom down to actually physically look at the cable? That's right. That's right. During the annual inspection, he was required to do a more thorough inspection of the crane, including parts that are covered during daily shift inspections, and in this case, he admitted he did not do that. So he identified two broken wires that, in his opinion, were not meeting the removal criteria. But shortly thereafter, there was a follow-up inspection that sort of was done more carefully by Mr. Hutchins, the crane operator, and a second employee, and they stated very affirmatively that they discovered additional broken wires. And this is very significant. Mr. Hutchins stated to the inspector during the investigation that he, in fact, had seen broken wires, specifically stated that they met the out-of-service criteria, and that he then went to his foreman, Mr. Sean Sheehane, and told him about all of this. Mr. Sean Sheehane also indicated to the OSHA investigator that this conversation happened, and he also observed broken wires on the cable. But my understanding is that these various people, Hutchins and Sean Sheehane, then retracted their statements at trial and said, no, they weren't really broken. That's correct, Your Honor. So there's a distinct difference between what was said during the investigation. As early as a day after the accident, the crane operator, Mr. Hutchins, indicated specifically that he had seen broken wires, and then once the sort of just before trial and at trial, include depositions and trial testimony, the descriptions of what they had seen, these crane operators, they had changed drastically from fractures to hairline fractures to cracks. They were, as the ALJ put it, really trying to avoid using the term broken. And as I will discuss later on, we don't think that's – we think that even the terms cracked and fractured reasonably are encompassed by the term broken. But to sort of close off here, the ALJ's determination that the boom cable was broken is rooted in credibility determinations, which are entitled to deference. There's nothing – my opponent has not highlighted any reason to doubt the ALJ's credibility findings. The ALJ noted that he believed, based on his observations of the witnesses' demeanor, their change in terms from pretrial to trial phases, that they had been coached and were trying to mitigate the consequences of their observations. And the ALJ called the testimony at trial obfuscatory, right? That's correct. That's correct. Also, he had good reason to discount Mr. Brian Bundy and Mr. Kindrecht's conclusions that the wires did not meet the out-of-service criteria. Both of them did not conduct a close enough examination. For instance, Mr. Brian Bundy, you can see in the record that he filled out the pre-shift inspection forms seven times he did so and did not indicate that there was something wrong with the boom cable. Whereas his colleagues, Mr. Hutchins and Sean Sheehan, did in fact state that there was something wrong with the cable. So that indicates that he wasn't looking at the cable closely enough. And when they said there was something wrong, did the form also say that the cable should be pulled out of service until being replaced? The notations on the inspection reports range from boom cable needs replacing, replace boom cable, to there being marks on certain boxes that indicated repair. Mr. Hutchins had marked, I believe, the April 28th inspection report. He had marked for the area noted for boom hoist that it needed to be repaired. And that term specifically means repair before further operation. At trial he explained this. He indicated that when he noted boom hoist that meant the boom cable and that when he noted repair that he meant that it should have been taken out of service, which is what he said. That's in fact printed on the form. Yes. Corrected. That's right. The form explanation of terms has repair means item needs to be repaired before further operation. Yes, that's right. And here the ALJ made a reasonable inference that these notations meant what they meant. They gave it the clear and unambiguous meaning of what it said in the reports. What about this thing that we spend an awful lot of time on in your opponent's argument about whether Hutchins was a supervisor or not? Can you address that? Sure. First off, I would like to say that irrespective of whether Mr. Hutchins is or is not a supervisor, knowledge here is established, actual and constructive knowledge is established here through the foreman, Sean Sheehane. There's no dispute that he's a supervisor. He observed broken wires, and also Mr. Tommy Sheehane, who is the superintendent. He's in charge of the entire project. Now, as Judge Strange properly pointed out, non-states can't have it both ways. It can't say that its crane operators aren't supervisors but then not supervise them at all. There's got to be some accountability on the part of the company. And this court has pointed out in Brock v. L.E. Myers that final responsibility of compliance with the OSHAC rests with the employer. So they can't farm out these responsibilities to their low-level employees and then fail to supervise them. And the record here indicates that they've simply failed to supervise these employees by allowing them to inspect, monitor, and have authority of taking these cranes out of service, then failing to sort of review these documents to ensure the safety of these cranes that are being used. If I may, I'd like to turn to the issue of deference to the Secretary's interpretation. Before you get to that, so are you contending that Hutchins was a supervisor or are you not contending that? Well, we agree with the ALJ's sort of reasoning on this. Basically what the ALJ did was he basically said that assuming that the company is correct in saying that they can give sole responsibility to the crane operators and give them no supervision, then that means that these crane operators, including Mr. Hutchins, are supervisors. There's case law in the commission that indicates that what needs to be looked at is indicia of authority that the employer has delegated to their lower-level employees to act on their behalf. And there's cases that found that where employees are authorized to take corrective action, they can become supervisors. And here these employees admittedly have been authorized to take corrective action or authorized to be able to take the crane out of service when they thought that it was right to do so. But your other position is that there is substantial evidence in the record existing independently of their supervisory status. Yes, first and foremost, there's actual knowledge through Mr. Sean Sheehan who observed the broken wires, which he said so during the investigation, which the ALJ found that was indeed the case, and constructive knowledge through Mr. Thomas Sheehan, who was the superintendent. Constructive knowledge can be established through showing that someone could have known of the valid condition with the exercise of reasonable diligence. This court in Carlisle Equipment has stated that there's a lack of reasonable diligence by failing to follow normal procedures and taking actions to discover violations. It also stated that reasonable diligence requires effort, attention, and action, not just reliance upon actions of others. So here Mr. Thomas Sheehan, the superintendent, couldn't just rely on the crane operators. While it's true that they continued to operate the crane, it was his obligation to sort of review the inspection reports to determine if the crane was safe to operate. And, in fact, he was on notice that there was something wrong with the boom cable. As soon as Mr. Hutchins informed his foreman, and his foreman informed Mr. Thomas Sheehan, the superintendent, to order a replacement cable. Why would the crane operators keep operating the crane if they knew it was not safe? That's a good question, Your Honor. The record doesn't necessarily explain that. There's certain reasons that I could surmise. It's possible that they were maybe under pressure to continue working. But the record doesn't give us an answer. The record doesn't fully explain that, no, Your Honor. So if I may, I'd like to turn to our interpretation. We submit that we're due substantial deference with our interpretation of the wire rope inspection standard. The test is reasonableness. And reasonableness means that our interpretation must conform to the purpose and wording of the regulation. Here, the words of the reg, the term broken, and the purpose of the wire rope inspection standard support our interpretation. When you look at the wording of the regulation, broken is undefined. And usually courts, when there's an undefined term, give the term its ordinary meaning. And this court and others have always looked to dictionary definitions as a way to finding out what that meaning is. As we've stated in our brief, the term broken can have a very broad meaning. And the definition of broken includes terms such as cracked and fractured. So simply the Mountain State's interpretation is simply too narrow. The term broken does not mean broken in two. That's not in the regulation at all. And, in fact, the fact that the term broken appears unqualified suggests that a broad meaning was intended. And that could mean anything from slightly broken to completely broken. And these terms, cracked and fractured, reasonably fall within that spectrum. And lastly, we must look at the common sense and the purpose of the wire rope standard. The Secretary's construction here best serves the remedial purpose of the Act as well as the specific purpose of this standard, which is meant to avoid crane collapses resulting from wire rope failure, which is exactly what happened in this case. In fact, the fact that the crane did collapse due to the wire rope snapping indicates that there was something drastically wrong with the boom cable. And whether that was cracked, fractured, or broken wires, it should have been taken out of service. We also believe that there's simply no due process violation here. The plain meaning of the standard and the word broken gives fair warning to the employer that it should have taken the crane out of service. And also there's, in this circuit, a duty of inquiry. Mountain State simply could have taken the safer option of taking the crane out of service. In fact, they had a replacement cable on site the day the crane collapsed. It had been there for several weeks. Does the record indicate why it was not put into the crane? I believe it does not. Similar to the question of why the crane operators continue to operate the crane, there simply is no real explanation for that. I see that my time is up. And we respectfully request that this Court deny Mountain State's petition for review. Thank you. If, in response to your questioning, the crane operators were representatives of the company, why was the investigator allowed to speak with them outside the presence of counsel? Counsel for the department talked about... Let me ask you. At that point, I guess there was no information in the record at that point that the review and the actions of these competent persons were not overseen by any supervisor. Is that correct? That would be correct. Then the second point would be how the judge who found that they were representatives, supervisors of the company, allowed their testimony to be the basis for his decision. When he had... Let me ask you. Didn't your opponent argue that the basis for the decision was substantial evidence that existed in the record without regard to supervisory status? That even... And I think he conceded even if they're not supervisors, there is substantial evidence in the record, and that was the first position of the ALJ, wasn't it? That there is substantial evidence in this record of meeting the requirements to replace the boom cable. And we would argue, without going into it, that there was evidence, but it was a scintilla rather than there being substantial evidence. Counsel talked about, as well as the judge did, that common sense indicated that fractures, no matter how minute, would affect the integrity of a wire rope, and therefore cracked should be included within the common sense definition. If that were so, the crane manual, which the manufacturer of the crane used for crane operators, would have depicted cracked wires. It showed in each instance where it depicted broken wires, broken apart wires. The crane operators testified that their training was that broken wires meant broken apart. There is nothing in the regulations that says that when we're dealing with highly technical matters, when we're dealing with, I don't know what it's called, metal strength, metallurgy, that we resort to common everyday dictionaries rather than technical manuals that will be more specific regarding it. I'm afraid your time is up. It's amazing how quickly time goes by. Particularly when you're having fun. Yes, exactly. When you're having a lot of questions. Thank you both for the argument. The case will be submitted with the clerk calling.